No. 22-2552

# In the United States Court of Appeals
# For the Third Circuit

ROBERT MATOR; NANCY MATOR,
Individually and as representatives of a class of participants and beneficiaries in
and on behalf of WESCO Distribution, Inc. Retirement Savings Plan,
*Plaintiffs-Appellants*,

v.

WESCO Distribution, Inc., The Administrative and Investment Committee for
WESCO Distribution Inc. Retirement Savings Plan; John and Jane Does 1-3,
*Defendants-Appellees*

On appeal from the United States District Court
for the Western District of Pennsylvania,
Case No. 2:21-cv-00403

# REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Steven A. Schwartz, Esquire
steveschwartz@chimicles.com
Beena M. McDonald, Esquire
bmm@chimicles.com
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
361 W. Lancaster Avenue
Haverford, PA  19041
Phone:  (610) 642-8500

Paul R. Wood, Esquire
woodp@fdazar.com
Timothy L. Foster, Esquire
fostert@fdazar.com
FRANKLIN D. AZAR
 & ASSOCIATES, P.C.
14426 E. Evans Avenue
Aurora, CO  80015
Phone:  (303) 757-3300

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 2

    I.     The District Court Erred in Continually Using the Wrong Standard of Review for a Rule 12(b)(6) Motion .................................. 2

    II.    Plaintiffs' Second Amended Complaint Plausibly Pleads that Defendants Engaged in an Imprudent Process in Administering the Plan, and Defendants' Arguments to the Contrary Lack Merit ...................................................................................................... 7

        A.        Defendants' Retention of Higher Cost Share Classes of Funds Over Identical Lower Cost Share Classes States a Plausible Claim of Imprudent Conduct ............................................. 7

        B.        Plaintiffs' Allegations of Excessive Recordkeeping Fees Based on Similar Market Comparisons State a Plausible Claim of Imprudent Conduct............................................. 12

            1.     Defendants' Argument that the Plan was Actively Monitored and Recordkeeping Fees Reduced Requires an Improper Parsing of the SAC ..................... 12

            2.     Plaintiffs' Allegations of Excessive Recordkeeping Fees are Detailed and Substantially Similar to the Excessive Recordkeeping Fee Allegations in *Sweda* ...................................................................................... 19

            3.     Plaintiffs' Allegations of Excessive Recordkeeping Fees are Based on Similar Market Comparisons as Used in Sweda and Defendants' Reliance on Out of Circuit Case Law to the Contrary is Factually Inapposite ...................................................................... 23

            4.     That Fidelity Charged Almost Four Times Less for the Same Recordkeeping Services Reflects that Defendants Breached Their Fiduciary Duties ............... 26

CONCLUSION ........................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Albert v. OshKosh*,
    47 F.4th 570 (7th Cir. 2022) ........................................................11, 22

*In re Apple Inc. Device Performance Litig.*,
    50 F.4th 769 (9th Cir. 2022) ...............................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................2, 3, 4

*Bagic v. Univ. of Pittsburgh*,
    773 Fed. Appx. 84 (3d Cir. June 11, 2019) .................................12, 16

*Bell Atlantic Corp., v. Twombly*,
    550 U.S. 544 (2007)......................................................................2, 3, 4

*Berkelhammer v. Automatic Data Processing, Inc.*,
    No. 2:20-cv-5696, 2022 U.S. Dist. LEXIS 150967
    (D.N.J. Aug. 23, 2022)........................................................2, 13, 14, 16

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...........................................................2, 7

*Coyer v. Univar Sols. USA Inc.*,
    No. 1:22-cv-0362, 2022 U.S. Dist. LEXIS 175972
    (N.D. Ill. Sept. 28, 2022) ..............................................................13, 26

*Davis v. Salesforce.Com, Inc.*,
    No. 21-15867, 2022 U.S. App. LEXIS 9527
    (9th Cir. 2022).................................................................................8, 10

*Davis v. Wash. Univ.*,
    960 F.3d 478 (8th Cir. 2020) ......................................................7, 8, 11

*Forman v. TriHealth, Inc.*,
    40 F.4th 443 (6th Cir. 2022) ............................................8, 11, 21, 22

*George v. Kraft Foods Glob., Inc.*,
    641 F.3d 786 (7th Cir. 2011) ...............................................................15

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022) ....................................................................*passim*

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
  140 S. Ct. 768 (2020) ...................................................................17

*Kong v. Trader Joe's Co.*,
  No. 20-56415, 2022 U.S. App. LEXIS 10323
  (9th Cir. 2022) ...............................................................8, 10, 11

*Krutchen v. Ricoh USA, Inc.*,
  No. 22-678, 2022 U.S. Dist. LEXIS 206792
  (E.D. Pa. Nov. 15, 2022) ..............................................................16, 23

*Mator v. Wesco Distrib., Inc.*,
  No. 2:21-CV-00403-MJH, 2022 U.S. Dist. LEXIS 147802
  (W.D. Pa. Aug. 18, 2022) ...............................................................23

*Matousek v. MidAmerican Energy Co.*,
  751 F.4th 274 (2022) ......................................................................22

*Moore v. Humana, Inc.*,
  No. 3:21-cv-232, 2022 U.S. Dist. LEXIS 238430
  (W.D. Ky. Mar. 30, 2022), *reconsideration denied*,
  2022 U.S. Dist. LEXIS 238411 (W.D. Ky. Dec. 1, 2022) ................................13

*Nicolas v. Trs. of Princeton Univ.*,
  No. 17-3695, 2017 U.S. Dist. LEXIS 151775
  (D.N.J. Sept. 25, 2017) ...................................................................16

*Perkins v. United Surgical Partners, Int'l Inc.*,
  No. 3:21-cv-973, 2022 U.S. Dist. LEXIS 48315
  (N.D. Tex. Mar. 18, 2022) ................................................................22

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021),
  *cert. denied*, 142 S. Ct. 1112 (2022) ..........................................................*passim*

*Santiago v. Univ. of Miami*,
  No. 1:20-cv-21784, 2021 U.S. Dist. LEXIS 39912
  (S.D. Fla. Mar. 1, 2021) ..................................................................15

*Sellers v. Trs. of Boston Coll.*,
  No. 22-10912, 2022 U.S. Dist. LEXIS 213664
  (D. Mass Dec. 27, 2022) ......................................................................13

*Singh v. Deloitte LLP*,
  No. 21-cv-8458, 2023 U.S. Dist. LEXIS 6910
  (S.D.N.Y Jan. 12, 2023)........................................................................22

*Smith v. CommonSpirit Health*,
  37 F.4th 1160 (6th Cir. 2022) .............................................................22

*Sweda v. Univ. of Pa.*,
  923 F.3d 320 (3d. Cir. 2019),
  *cert denied*, 140 S. Ct. 2565 (2020)..............................................*passim*

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015)..........................................................................7, 11

*White v. Chevron*,
  No. 16-cv-0793-PJH, 2016 U.S. Dist. LEXIS 115875
  (C.D. Cal. Aug. 29, 2016)....................................................................15

*White v. Chevron Corp. (White II)*,
  752 F. App'x 453 (9th Cir. 2018) .....................................................8, 15

## **OTHER AUTHORITIES**

29 C.F.R. § 2550.404a-1(b)(1)(i)............................................................17

Fed. R. Civ. P. 12 ..............................................................................1, 2

Fed. R. Civ. P. 12(b)(6).................................................................1, 2, 11

# **INTRODUCTION**

Like the District Court's decisions below, Defendants' arguments conflict with this Court's decision in *Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d. Cir. 2019), *cert denied*, 140 S. Ct. 2565 (2020), which reversed the dismissal of substantially-identical share class and recordkeeping fee claims. Defendants ask this Court to spurn its own precedent in favor of out-of-Circuit cases with distinguishable facts, to "deprive[] [P]laintiff[s] of the benefit of the [c]ourt's adjudication of the merits of its claims before the court considers any evidence." *Id.* at 325. Defendants also ask this Court to ignore the fact that the District Court applied the wrong standard applicable to Rule 12 motions (*i.e.*, that a plaintiff's claim must be "probable" instead of "plausible"). Defendants' picayune arguments debating the facts, as well as those offered by its *Amicus*,[1] only highlight how the District Court erred by first applying an incorrect "probability" standard and second by parsing the Second Amended Complaint (SAC) piece by piece and requiring Plaintiffs "to rule out every possible lawful explanation for the conduct [they] challenge." *Sweda*, 923 F.3d at 326, 331; *see also Sacerdote v. New York Univ.*, 9 F.4th 95, 108 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). But "Rule 12(b)(6) does not

---

[1] Notably, the arguments made by the Chamber of Commerce ("Defendants' *Amicus*") in this case (App. Dkt. No. 29) are substantially identical to those previously made by the Chamber and rejected in *Sweda. See* No. 17-3244, Doc: 003112902574, Apr. 12, 2018.

1

countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted). The detailed facts alleged in the SAC plausibly state a claim, and Defendants' arguments to the contrary should be rejected.

## **ARGUMENT**

### I.    **The District Court Erred in Continually Using the Wrong Standard of Review for a Rule 12(b)(6) Motion**

The District Court erred in applying a heightened standard of review to a motion to dismiss by improperly requiring Plaintiffs to "bear the burden of rebutting defendants' competing factual narrative," contrary to the Supreme Court's holdings in *Hughes*, *Iqbal*, and *Twombly* to "tak[e] the complaint as a whole," and this Court's holding in *Sweda* that a complaint should not be "parsed piece by piece to determine whether each allegation, in isolation, is plausible." *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009); *Twombly*, 550 U.S. at 555; *Sweda*, 923 F.3d at 331-332; *see also Berkelhammer v. Automatic Data Processing, Inc.*, 2022 U.S. Dist. LEXIS 150967, at *10 (D.N.J. Aug. 23, 2022); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *Sacerdote*, 9 F.4th at 108. The District Court compounded its error by applying the wrong standard applicable to Rule 12 motions. The pleading standard for ERISA cases is well established: A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is **plausible** on its face" and a claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556, 570) (emphasis added); *Sweda*, 923 F.3d at 332. "Asking for plausible grounds…does not impose a probability requirement at the pleading stage … a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation omitted). If a district court errs in using the incorrect standard of review, its decision must be reversed. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 776, 782-783 (9th Cir. 2022) (vacating approval of class action settlement even where district court "made a "thoughtful and thorough analysis" and took "great care in considering the terms of the settlement").

Recognizing there is no defense to the District Court's application of the wrong standard, Defendants ask this Court to simply ignore it, arguing that the District Court only made a "passing reference" to the incorrect probability standard. *See* Defs.' Br. at 50.[2] Not true. The District Court cited to this improper "probability"

---

[2] Defendants also misrepresent Plaintiffs' arguments by claiming Plaintiffs support a lower pleading standard. Defs.' Br. at 53. Plaintiffs never advance such an argument in any section of their brief and have consistently quoted *Hughes, Iqbal, Twombly* and *Sweda* in support of the plausibility pleading standard applicable to this case. *See* Pltfs.' Opening Br. at 18-20. Defendants' *Amicus* goes further and explicitly accuses this Court of "appear[ing] to adopt the position that ERISA claims

3

standard not only in its first opinion, but also doubled and tripled down in citing that standard in each of its subsequent opinions. *See* Appx0017 (**"That said, allegations must cross 'the threshold from possible to probable.'"**) (emphasis added), quoting *Johnson v. PNC Fin. Servs. Grp., Inc*., 2021 U.S. Dist. LEXIS 149408, at *13 (W.D. Pa. Aug. 3, 2021), *dismissed in part*, 2022 U.S. Dist. LEXIS 60711 (W.D. Pa. Mar. 31, 2022); Appx0036 ("That said, allegations must cross 'the threshold from possible to probable.'"); Appx0055 ("That said, allegations must cross 'the threshold from possible to probable.").[3]

And the District Court's mistake was not simply one of nomenclature. That the District Court's entire analysis was infected by applying a heightened pleading requirement and therefore impermissibly weighing the parties' competing evidence, is reflected throughout its decisions. For example, the District Court:

- held that a "side by side comparison does not account for quality of services" nor is it a "complete nature of and scope of the services," despite Plaintiffs listing the type and scope of services offered by the Plan's recordkeeper and similar recordkeepers (Appx0015-Appx0016;

---

were exempt from the plausibility pleading requirement," despite acknowledging that the Court declined only to extend *Twombly's* antitrust pleading rule to ERISA claims. Defs.' *Amicus* Br. at 4, 12, 14.

[3] The District Court tripled down even after Plaintiffs pointed out that it had applied the wrong standard. *See Mator v. Wesco Distrib., Inc.,* No. 2:21-cv-00403, Pltfs.' Opp. to Mtn. to Dismiss SAC, ECF No. 70, p. 7, fn 4.

Appx0019-Appx0020;    Appx0034-Appx0035;    Appx0037-Appx0038;
Appx0056);

- required Plaintiffs to "articulate what particular discovery would assist the parties and Court in the assessment of Wells Fargo's services and its comparators" (Appx0020);

- required Plaintiffs to "capture all the details, nuances, and scope of different [Recordkeeping] services" – such as details about telephone support services – and "have the same list codes relative to services" (Appx0013-Appx0014; Appx0022);

- required Plaintiffs to plead "additional details as to fee structures and services provided" and incorrectly presumed that Plaintiffs calculated direct and indirect fees for the Plan and comparator plans differently (Appx0014-0015; Appx0022-0023; Appx0037; Appx0057);

- required Plaintiffs to "exhaust[] investigatory avenues at the pleading stage" because Plaintiffs "*may* have access to additional information" (Appx0039; s*ee also* Pltfs.' Opening Br. at 46, fn.17) (emphasis added);[4]

---

[4] The District Court searched far and wide for reasons to dismiss Plaintiffs' complaint. For example, in order to distinguish a decision from a sister court in the Western District of Pennsylvania upholding substantially-similar claims based on substantially-similar allegations, the District Court not only incorrectly assumed that Plaintiffs' here could have obtained the Plan's prior recordkeeping service agreement with Wells Fargo before filing suit, but also assumed, with no basis whatsoever, that the plaintiffs in the other case had actually done so. *See* Appx0039,

- required Plaintiffs to use comparator plans that *exactly* "match the Plan relative to number of participants or asset size," despite allegations comparing plans that were *similar* in size, number of participants, and recordkeeper (Appx0013; Appx0021-0022); and

- required Plaintiffs to allege more details about higher cost share classes, despite Plaintiffs' allegations that Defendants provided the higher cost retail share classes of mutual funds when materially identical lower-cost institutional share classes were available. (Appx0023-0024; Appx0041-Appx0042; Apppx0058-Appx0059).

Despite initially recognizing that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences" (Appx0039-Appx0040), the District Court erred in holding Plaintiffs to a *higher* standard by making exacting and specific demands at the pleading stage. But "[i]f plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the [ERISA] statute will fail, and the crucial rights secured by ERISA will suffer."

---

*citing Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 149408 (W.D. Pa. Aug. 3, 2021), *dismissed in part*, 2022 U.S. Dist. LEXIS 60711 (W.D. Pa. Mar. 31, 2022). The District Court's speculation proved wrong on both counts. When Plaintiffs demonstrated the inaccuracy of such speculation, the District Court simply ignored its mistake and relied on new reasons to dismiss the TAC. *See* Pltfs.' Opening Br. at 45-46, fn. 17.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *see also Sweda*, 923 F.3d at 331.

**II.    Plaintiffs' Second Amended Complaint Plausibly Pleads that Defendants Engaged in an Imprudent Process in Administering the Plan, and Defendants' Arguments to the Contrary Lack Merit**

**A.    Defendants' Retention of Higher Cost Share Classes of Funds Over Identical Lower Cost Share Classes States a Plausible Claim of Imprudent Conduct**

Defendants do not dispute that from 2015-2019, they selected 19 "retail" versions of mutual funds for which otherwise identical "institutional" share classes were available at a lower cost. Appx2153-Appx2155 (SAC ¶ 133-137). In *Sweda*, this Court reversed the dismissal of substantially-identical allegations of fiduciary imprudence based upon selecting and retaining identically managed but higher cost retail share classes. 923 F.3d at 331, 333 (allegations included a table of cheaper alternatives and that retail share classes were imprudently costly, duplicative, decreased value of fund, reduced Plan leverage, and confused participants). Prior to *Sweda*, the Supreme Court also reversed the dismissal of substantially-identical share class claims, *see Tibble v. Edison Int'l*, 575 U.S. 523 (2015), and after remand, the plaintiffs won their share class claims at trial, because "a prudent fiduciary would have invested in lower-cost institutional-class shares." 2017 U.S. Dist. LEXIS 130806, at *38-39 (C.D. Cal. Aug. 17, 2017). After *Sweda*, the Eighth Circuit also reversed the dismissal of identical claims. *Davis v. Wash. Univ*., 960 F.3d 478 (8th

7

Cir. 2020) ("*WashU*"). The Second Circuit followed suit and, citing *Sweda*, reversed the dismissal of identical share class claims. *Sacerdote*, 9 F.4th at 110 & fn. 42 ("drawing all reasonable inferences in their favor, plaintiffs have plausibly alleged that offering these retail shares rather than institutional shares was imprudent. This claim should have been, and now must be, litigated on the merits."). Thereafter, the Supreme Court, citing *Tibble*, reversed the Seventh Circuit's dismissal of plaintiffs' share class claims. *See Hughes*, 142 S. Ct. at 741. Following *Hughes*, the Sixth and Ninth Circuits also reversed dismissals of identical share class claims. *See Kong v. Trader Joe's Co.*, 2022 U.S. App. LEXIS 10323, at *2 (9th Cir. 2022); *Davis v. Salesforce.Com, Inc.*, 2022 U.S. App. LEXIS 9527, at *2 (9th Cir. 2022) ("*Salesforce*"); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 450 (6th Cir. 2022) (reversing dismissal of share class claims as "to early to make [] judgment calls" at the pleadings stage without "further development of the facts").

The District Court erred by ignoring the binding precedent in *Sweda* and ignoring the other Circuit-court cases listed above, bizarrely suggesting there was a "dearth" and "absence of Third Circuit authority" from which to glean any support. Appx0013; Appx0058. Then the District Court relied on the unpublished outdated decision in *White v. Chevron Corp. (White II)*, 752 F. App'x 453 (9th Cir. 2018) and the district court's decision in *Kong*, even though post-*Hughes* the Ninth Circuit in *Salesforce* and *Kong* implicitly overruled *White II* and explicitly overruled the

dismissal in *Kong*, and even though this Court in *Sweda* disagreed with both of those decisions. That flawed analysis underscores how instead of faithfully applying the plausibility standard and construing inferences favor of plaintiffs, the District Court went out of its way searching for reasons to dismiss Plaintiffs' claims.

Defendants argue that Plaintiffs' share-class claim is "interdependent" with the excessive fees claim, speculating (without any evidentiary support) that "the reason" for including higher cost funds was to pay revenue-sharing for recordkeeping costs. Defs.' Br. at 44, 46. This speculative argument is a strawman of Defendants' creation and untrue. Plaintiffs' share class claims are more specific and operate independent of their recordkeeping claims. While both claims involve payment of excessive fees, Plaintiffs' detailed share-class allegations of imprudence are that the revenue sharing fees from higher-cost retail share classes should not have been paid *at all* because: (a) Defendants did not use the Plan's bargaining power to obtain available identical lower cost institutional share classes of funds *without* the revenue sharing expenses; (b) Wells Fargo was already being paid direct fees from participants' accounts that went towards recordkeeping fees; (c) these higher fees paid *out* correlate to less money kept *in* the Plan, thereby reducing any return on investment to the tune of hundreds of thousands of dollars; (d) Defendants did not *require* Wells Fargo rebate excessive higher cost fees throughout the putative class period; and (e) these higher costs fees had no other prudent, remunerative purpose

9

because (i) all of the institutional class shares outperformed the higher cost alternatives, (ii) the investment risk factors are the same for all share classes, and (iii) since Wells Fargo was already being directly paid to perform administrative services, the level of services offered by the mutual fund companies is irrelevant. Appx2152-Appx2155 (SAC ¶¶ 129-142). Defendants do not deny any of these detailed allegations. Therefore, their attempt to recast the relevant inquiry as to whether alternative explanations for offering higher cost shares exist – rather than whether Defendants plausibly acted imprudently – must fail.

Indeed, no court has endorsed such an argument, and several Circuit Courts have rejected it. *See, e.g.*, *Sacerdote*, 9 F.4th at 110 (rejecting argument that "because the use of revenue sharing was found not imprudent at trial, and because the difference in costs between retail and institutional shares supplies the funds for the revenue sharing arrangement to pay the recordkeepers, the dismissal of the share-class claim on the pleadings was harmless"); *Kong*, 2022 U.S. App. LEXIS 10323, at \*3 (rejecting as "unavailing" defendants' argument that since the "parties signed a revenue sharing agreement that might provide some explanation for this choice" to select retail instead of institutional class shares); *Salesforce*, 2022 U.S. App. LEXIS 9527, at \*3-4 (rejecting the same argument and emphasizing that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to

dismiss under Rule 12(b)(6)"); *Forman*, 40 F.4th at 450 ("Perhaps the plan has revenue-sharing arrangements in place that make the retail shares less expensive or that benefit plan participants on the whole. But at the pleading stage, it is too early to make these judgment calls"). In addition, in *WashU,* the Eighth Circuit considered plaintiffs' share class and recordkeeping fees together. 960 F.3d at 482-483. Defendants' attempt to distinguish these holdings suffers from the same flaw as the reasoning of the District Court throughout its decision below – a failure to make plausible inferences in favor of Plaintiffs instead of searching for inferences that might support Defendants' contentions.

Defendants' citation to *Albert v. OshKosh*, 47 F.4th 570, 580 (7th Cir. 2022) is inapposite. That case did not include a claim, like here and in the cases cited above, that defendants breached their fiduciary duties by choosing the higher cost retail shares. Rather, the plaintiffs in *Albert* argued that the plan should have offered higher-cost retail share classes, which is "the inverse of what ERISA plaintiffs typically argue." *Id*. at 581. Plaintiffs there also challenged the selection of actively managed funds versus passively managed funds, a claim not asserted here. *Id*.

This Court should follow *Sweda*, *Hughes*, *Tibble*, *Sacerdote*, *Kong*, *Salesforce*, *WashU* and *Forman* and reverse the District Court's dismissal of Plaintiffs' share class claims.

**B.    Plaintiffs' Allegations of Excessive Recordkeeping Fees Based on Similar Market Comparisons State a Plausible Claim of Imprudent Conduct**

**1.    Defendants' Argument that the Plan was Actively Monitored and Recordkeeping Fees Reduced Requires an Improper Parsing of the SAC**

Plaintiffs have offered "substantial" direct and "circumstantial evidence from which the District Court could 'reasonably infer' that a breach had occurred." *Sweda*, 923 F.3d at 332, *quoting Pension Benefit Guar. Corp. ex. rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt.Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). Defendants counter arguments are merits-based and better suited for summary judgment or trial. Plaintiffs have alleged, *inter alia*, that unlike prudent fiduciaries, Defendants: (a) caused the Plan to pay excessive recordkeeping and administrative fees when plans similar in size, assets, and using the same recordkeeper paid almost four times less for the same or similar services;[5] (b) could have negotiated a per-participant cap on fees, but failed to do so; (c) failed to solicit competitive bids over the course of 10 years, thereby failing to continually asses and monitor the Plan's fees; and (d) failed to leverage the Plan's size to obtain lower fees

---

[5] Defendants argue (Defs.' Br.  at 40-43) that "Plaintiffs admit they calculate fees differently for [Defendants] than for other plans." Not so. Plaintiffs calculated the fees for the Plan using the portion of the recordkeeping agreement provided by Defendants. Crediting Defendants' arguments to the contrary would require the Court to make improper factual determinations by "weighing the credibility of the parties' positions" that is more apt for a factfinder. *Bagic v. Univ. of Pittsburgh*, 773 Fed. Appx. 84, 87 (3d Cir. June 11, 2019) (quotation omitted).

or to require rebates. Appx2136-Appx2151 (SAC ¶¶ 93-128). These allegations, considered as a whole, and in tandem with each other, as required by *Sweda*, are more than sufficient to plausibly state a claim. Further, Plaintiffs' allegations provide as much, if not more, supporting detail as provided in the cases that have upheld similar recordkeeping fee claims. *See Sweda*, 923 F.3d at 332; *Hughes*, 142 S. Ct. 737 (reversing dismissal of recordkeeping fee claims). *See also Berkelhammer*, 2022 U.S. Dist. LEXIS 150967, at *13-17; *Sellers v. Trs. of Boston Coll.*, 2022 U.S. Dist. LEXIS 213664, at *20-21 (D. Mass Dec. 27, 2022); *Moore v. Humana, Inc.*, 2022 U.S. Dist. LEXIS 238430 (W.D. Ky. Mar. 30, 2022), *reconsideration denied*, 2022 U.S. Dist. LEXIS 238411, at *4-7 (W.D. Ky. Dec. 1, 2022); *Coyer v. Univar Sols. USA Inc.*, 2022 U.S. Dist. LEXIS 175972, at *12-15 (N.D. Ill. Sept. 28, 2022).

Ignoring the governing standards at the pleadings stage, Defendants ask this Court to parse each of Plaintiffs' allegations in isolation and then evaluate the relative weight and probative value of each of Plaintiffs' allegations. Such an analysis is not proper at the pleadings stage and should await evaluation until summary judgment or at trial. For example, Defendants ask this Court to draw inferences in their favor and make the factual finding that they must have employed a prudent process because of year-to-year decreases in the Plan's recordkeeping and administrative fees in some, *but not all*, of the years before the filing of the SAC. Defs' Br. at 26, 28. This argument is procedurally unsound, factually inaccurate and

misleading,[6] and contrary to governing decisions. As this Court held, such an argument:

> goes to the merits and is misplaced at this early stage. Although [Defendants] may be able to demonstrate that its process was prudent, [this Court is] not permitted to accept [Defendants'] account of the facts or draw inferences in [Defendants'] favor at this stage of litigation.

*Sweda*, 923 F.3d at 333. Defendants' also suggest that simply because the Plan replaced its recordkeeper in 2020, after 10 years of paying excessive fees, they must have acted prudently. Defs.' Br. at 28. But in order to make the inference Defendants suggest, the SAC would need to be reviewed most favorably to Defendants, not Plaintiffs. That turns the governing pleadings standards on its head. *See Berkelhammer*, 2022 U.S. Dist. LEXIS 150967, at *19. The much more plausible inference is that Defendants were asleep at the switch for 10 years, and finally woke up (in response to the numerous class actions brought against other pension plan trustees) only to discover that by bidding out recordkeepers, they could switch from Wells Fargo to Fidelity to reduce the fees from an average of $153 per participant to $53 per participant. Appx2146-2147 (SAC ¶¶ 110, 112).

Supporting Plaintiffs' allegation that Defendants were asleep at the switch, the SAC alleges that competitive bidding should be conducted at least once every

---

[6] The *direct* fees paid to Wells Fargo *increased* almost 12% from 2016 to 2017, and the *indirect* fees paid to Wells Fargo *increased* by almost 22% from 2015 to 2019. Appx2138-Appx2141 (SAC ¶¶ 97-99).

three to five years and (Appx2136 (SAC ¶ 90)) with industry standard further

indicating benchmarking and negotiating fees should occur at least every other year

and that services should be reviewed annually to identify opportunities to reduce

fees (Appx2134 (SAC ¶ 85)), but Defendants failed to do so. Appx2149 (SAC ¶

122). Defendants do not deny that they failed to engage in competitive bidding or

conduct RFPs during these 10 years. Rather, they cite out-of-Circuit law, including

*White v. Chevron*, 2016 U.S. Dist. LEXIS 115875, at *45 (C.D. Cal. Aug. 29, 2016)

("*White I*"), to suggest that the failure to obtain competitive quotes from

recordkeeping providers is not required under ERISA. Defs.' Br. at 27. But

Defendants misstate the holding in *White I*, which dismissed plaintiffs' claims

because they "failed to allege any facts from which one could infer that a competitive

bidding service would have benefitted the plan" and "failed to allege any facts

showing that the same service might have been available on the market for less." *See

also George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 800 (7th Cir. 2011) (factfinder

could conclude that fiduciaries imprudently permitted unreasonable recordkeeping

fees where competitive bidding was not conducted for more than 15 years); *Santiago

v. Univ. of Miami*, 2021 U.S. Dist. LEXIS 39912, at *17-18 (S.D. Fla. Mar. 1, 2021)

(holding "failure to implement a competitive bidding system is a fact-intensive

question" and distinguishing *White I* where plaintiffs allege that competitive bidding

would have benefitted to find lower rates and to know that fees being incurred were

unreasonable and excessive). This stands in stark contrast to the detailed facts alleged in the SAC that had Defendants conducted competitive bidding from 2009 to 2019 they could have obtained more competitive recordkeeping and administrative services fees (like those obtained by other plans) or negotiated with Wells Fargo to reduce its fees. Appx2141-Appx2146 (SAC ¶¶ 102-110); Appx2148-Appx2151 (SAC ¶¶ 115-128).

Importantly, this Court has held that a defendant's failure to conduct competitive bidding *is* a relevant factor that supports a finding of imprudent conduct. *Sweda*, 923 F.3d 330; *see also Berkelhammer*, 2022 U.S. LEXIS 150967, at *18; *Krutchen v. Ricoh USA, Inc.*, 2022 U.S. Dist. LEXIS 206792, at * 7-8 (E.D. Pa. Nov. 15, 2022); *Nicolas v. Trs. of Princeton Univ.*, 2017 U.S. Dist. LEXIS 151775, at *10-11 (D.N.J. Sept. 25, 2017). Plaintiffs are entitled to that reasonable inference. Plaintiffs are also entitled to the reasonable inference that Defendants' failure to engage in competitive bidding for 10 years supports Plaintiffs' imprudence claims even though 5 of those years occurred outside the statute of limitations. Even if Plaintiffs cannot collect damages that occurred outside the statute of limitations, they can rely on evidence from outside the limitations period to support their timely claims so the factfinder can perform "a context-specific inquiry of the fiduciaries' continuing duty to monitor investments and to remove imprudent ones." *Hughes*, 142 S. Ct. at 560, *citing Tibble*, 575 U.S. at 530.

16

Further, Defendants also make factual assertions that are either inaccurate or premised on cherry-picked portions of documents they submitted to the District Court. Such cherry-picking reflects a lack of transparency which epitomizes why Plaintiffs should be permitted to proceed to discovery so the parties' competing arguments can be evaluated on a fair, full record. For example, Defendants ask the Court to take judicial notice of multiple "Amendment[s] to the Wells Fargo Services Agreement Exhibits." Defs.' Br. at 26, 28. However, Defendants chose against submitting the *full* copy of the underlying Service Agreement, and only submitted *limited* portions of the Plan's fee arrangements for the years 2011, 2015, 2017, and 2018, thereby making any factual assertions and inferences based on those partial documents suspect.[7] Defendants failure to submit the entire Services Agreement also prevented Plaintiffs from determining the exact scope of recordkeeping services offered by Wells Fargo. But Defendants use these omissions as a sword to argue that Plaintiffs' failed to properly allege the scope and quality of Wells Fargo's services compared to those of other recordkeepers but also use the omissions, unfairly, as a shield to suggest that recordkeeping fees were reduced.

---

[7] Notwithstanding their argument that evidence outside the limitations period is irrelevant, Defendants incongruently rely on portions of their fee agreement with Wells Fargo for years prior to 2015 and ask the Court to consider the issue of basis points paid by the Plan beginning in 2011. Defs.' Br. at 28; Appx2479.

Defendants also create confusion by arguing that the percentage charged for *direct* asset-based recordkeeping fees dropped over the years between January 2015 and October 2018. Defs.' Br. at 28. First, Defendants misleadingly fail to address the fact that Wells Fargo was also collecting *indirect* revenue sharing fees from the various mutual funds. Appx2139-Appx2140 (SAC ¶ 98 & fn. 19). Second, Defendants ignore the fact that during the same time frame the *total* fees remained excessive because the assets also increased (these assets form the basis for the direct and indirect fees since both were based on a percentage of assets). Appx.2130-Appx2131 (SAC ¶¶ 73-74' Appx2133 (SAC ¶ 84). The *direct* fees *increased* almost 12% from 2016 to 2017, and the *indirect* fees paid to Wells Fargo *increased* by almost 22% from 2015 to 2019. Appx2138-Appx2141 (SAC ¶¶ 97-99).

Defendants' argument that it procured credits for Plan participants in 2018 and 2019 based upon selective inclusion of two pages of "credit statements" (Defs.' Br. at 28) is unsupported by the Amendments they produced, which do not address rebates or credits of revenue sharing to participants. These "credit statements" raise further significant questions that can only be addressed in discovery, such as (a) the amount of the purported credits provided; (b) how the purported credits were calculated; and (c) why there were no credits in the years prior to 2018 despite – according to Defendants – Wells Fargo charging a higher percentage (in basis points) for its asset based fees in those earlier years. A prudent fiduciary must ensure that

the recordkeeper rebates to the plan all revenue sharing payments that exceed a reasonable, negotiated recordkeeping fee. Appx2133 (SAC ¶ 83); Appx 2136 (SAC ¶ 91).

Despite Defendants' attempt to make confusing, if not inaccurate, factual arguments based on cherry-picked documents and a one-sided record, the bottom line is that until they finally conducted competitive bidding and switched to Fidelity in 2020, Defendants permitted Wells Fargo to charge the Plan fees that far exceeded the market price for recordkeeping services. Not only did Fidelity charge a far lower price (almost four times less), but as discussed below, Wells Fargo charged the Plan more than it was charging other clients at the same time for the very same recordkeeping services.

**2.  Plaintiffs' Allegations of Excessive Recordkeeping Fees are Detailed and Substantially Similar to the Excessive Recordkeeping Fee Allegations in *Sweda***

Defendants' argument that Plaintiffs' allegations of excessive recordkeeping and administrative fees are insufficient represents nothing more than an impermissible request to weigh competing evidence at the pleadings stage. Defs.' Br. at 29. Just as in *Sweda*, Plaintiffs here have alleged considerable evidence from which the District Court should have reasonably inferred Defendants' breach of fiduciary duty. *Sweda*, 923 F.3d at 332. Defendants' argument that Plaintiffs' allegations are "narrower in scope" than those in *Sweda* is misplaced. Defs.' Br. at

53. This Court did not reverse the dismissal of plaintiff's share class and recordkeeping claims in *Sweda* simply because the complaint there included additional (weaker) claims besides share class and recordkeeping claims. Rather, this Court reversed the dismissal of the share class and recordkeeping claims because the allegations with *respect to those claims*, considered as a whole, supported an inference of fiduciary breach.

Mistakenly following Defendants' argument, the District Court erred in either ignoring or minimizing Plaintiff's factual allegations supporting their recordkeeping claims that not only mirror, but also exceed those alleged in *Sweda*. Like Plaintiffs here, the *Sweda* plaintiffs alleged that the plan excessively paid multiples more than a reasonable recordkeeping fee than similar plans for the same services, paying between $4.5-$5.5 million annually versus $700,000-$750,000.[8] 923 F.3d at 330. Like Plaintiffs here, the *Sweda* plaintiffs alleged that defendants could have, but failed to, negotiate a cap on fees or renegotiate the fee structure, and assess the reasonableness of the plan's recordkeeping fees by soliciting competitive bids.[9] *Id.* Like Plaintiffs here, the *Sweda* plaintiffs further alleged that percentage-based

---

[8] *Compare* Appx2137 (SAC ¶ 96); Appx2140-2141 (SAC ¶¶ 99-100, 102); Appx2143-2145 (SAC ¶¶ 105-108), stating the Plan paid between $908,000 and $1.5 million in total annual recordkeeping fees when similar plans paid between $201,000 and $526,000.

[9] *Compare* Appx2138-2139 (SAC ¶¶ 97-98); Appx2141 (SAC ¶ 100); Appx2148-2149 (SAC ¶¶ 115, 118, 120).

recordkeeping fees went up as assets grew, despite there being no corresponding increase in recordkeeping services.[10] *Id*. The *Sweda* plaintiffs offered examples of similarly situated fiduciaries for other University plans (of varying sizes) who acted prudently by requesting recordkeeping proposals and negotiating millions in revenue sharing rebates.[11] *Id.* at 330-31. Unlike the comparable plans, the *Sweda* plaintiffs alleged that defendants did not meet industry standard. *Id.* This Court has found these similar factual allegations in *Sweda* to be "numerous and specific" enough to plausibly allege a breach of fiduciary duty. *Id.* at 332. Plaintiffs here made the same allegations based on the same type of comparator plan analysis as made in *Sweda*, and every criticism that Defendants and the District Court made of Plaintiffs' comparator plan analysis could have been made with equal force with respect to the comparator plan analysis in *Sweda*.

Plaintiffs detailed allegations in the SAC are far more robust than those in the authorities relied upon in error by the District Court. Yet, Defendants and their *Amicus* make arguments based on these inapposite holdings without examining the underlying facts of each complaint that, unlike here, provide only threadbare allegations. *See* Pltfs.' Opening Br.,  at 42-43; *Forman*, 40 F.4th at 449 (affirming dismissal of complaint that offers only "bare allegations" that are "devoid of all

---

[10] *Compare* Appx2130 (SAC ¶ 73); Appx2148-2149 (SAC ¶¶ 118, 121).
[11] *Compare* Appx2133-2134 (SAC ¶¶ 83, 86); Appx2149 (SAC ¶ 120).

context" with no cite to any specific comparator plans at all), *see also Forman*, No. 1:19-cv-00613 (S.D. Ohio Oct. 17, 2019), ECF. No. 15, *Forman* Amd. Compl., pp. 10-11, ¶ 29; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (affirming dismissal of complaint that "fails to give [] context" with no cite to any comparator plans at all); *see also Smith*, No. 2:20-cv-00095 (E.D. Ky. Jul. 2, 2020), ECF No. 1, *Smith* Compl., pp. 26-28; *Albert*, 47 F.4th at 580 (affirming dismissal of complaint in reliance on *Smith* and *Forman*); *Matousek v. MidAmerican Energy Co.*, 751 F.4th 274, 280 (2022) (affirming dismissal of complaint that does not point to fees from other comparable plans and uses only industry-wide averages as benchmarks), *see also Matousek*, No. 4:20-cv-00352 (S.D. Iowa Nov. 13, 2020), ECF No. 1, *Matousek* Compl., pp. 15-19; *Singh v. Deloitte LLP*, 2023 U.S. Dist. LEXIS 6910, at *14-15 (S.D.N.Y Jan. 12, 2023), *see also Singh* Complaint, ECF No. 1, at ¶¶ 58-73 (dismissing complaint because plaintiffs did not allege any type of recordkeeping services at all); *Perkins v. United Surgical Partners, Int'l Inc.*, 2022 U.S. Dist. LEXIS 48315, at * (N.D. Tex. Mar. 18, 2022) (dismissing complaint because there was only comparison to an industry report and no comparisons to other similar plans), *see also Perkins* Complaint, ECF No. 1, at ¶¶ 64-78. Because the complaints in those cases were dismissed based on merely conclusory recordkeeping allegations, they provide no support for dismissal of Plaintiffs' SAC here. To the contrary, the paltry facts in these cases only bolster the plausibility of the detailed

22

allegations made in Plaintiffs' SAC. *See e.g., Krutchen*, 2022 U.S. Dist. LEXIS 206792, at \*9 ("Plaintiffs actually plead fewer facts than the plaintiff in *Mator*," citing to the District Court's decision in the instant case, *Mator v. Wesco Distrib., Inc.*, 2022 U.S. Dist. LEXIS 147802 (W.D. Pa. Aug. 18, 2022). And while Defendants claim that the SAC "says very little about the recordkeeping services provided" (Defs.' Br. at 32), they do not dispute and, in fact, acknowledge, the lengthy allegations of services provided to the Plan. *Id.* Defendants' additional persnickety arguments suggesting Plaintiffs' allegations are insufficient – that "[p]rudent fiduciaries could easily disagree" about higher costs for telephone support services, or that there may be "different levels of service at different prices" (Defs.' Br. at 34-35) – all improperly require parsing of the SAC and fail at this stage.

### 3. Plaintiffs' Allegations of Excessive Recordkeeping Fees are Based on Similar Market Comparisons as Used in Sweda and Defendants' Reliance on Out of Circuit Case Law to the Contrary is Factually Inapposite

Plaintiffs' allege that the recordkeeping fees paid to Wells Fargo were approximately four times the amount of a reasonable fee. Appx2137-2148 (SAC ¶¶ 95-115). The Plan paid Wells Fargo an average of $153 per participant per year in total Recordkeeping services fees, when a reasonable fee would have been approximately $42 per participant. Appx2141 (SAC ¶102); Appx2143 (SAC ¶ 106); Appx2146-2147 (SAC ¶¶ 110,112). Plaintiffs identify *five* examples of plans, comparable in number of plan participants and assets, that also used Wells Fargo as

a recordkeeper, but were charged far lower total per-participant Recordkeeping fees by Wells Fargo. Appx2141 (SAC ¶ 102). That the Defendants permitted Wells Fargo to charge the Plan more than it charged other plans for the same services should be enough by itself to state a breach of fiduciary duty. But Plaintiffs further identify *eleven* other plans, with comparable numbers of plan participants and assets, that use other top retirement service providers, but pay far lower total per-participant Recordkeeping fees. Appx2143 (SAC ¶ 106). These other top retirement services providers, "Fidelity, Vanguard, T. Rowe Price, Voya, and Transamerica," were direct competitors of Wells Fargo, providing services for defined contribution plans with assets in excess of $200 million. Appx2144-2145 (SAC ¶¶ 107, 108).[12] In addition, Plaintiffs' buttressed their comparator plan fee analysis by citing a report from the consulting group NEPC that confirms that the Plan's alleged fees were excessive. Appx2147 (SAC ¶ 113) (finding that the range of total recordkeeping fees for 121 plans with between 5,000 and 10,000 participants (the same size category as the Plan here) was between $40 and $60 per participant as of December 31, 2018, and no plan in that range paid more than $90 per participant in total fees). That NEPC report corroborates the robustness of the comparator plan fee analysis set forth in the

---

[12] The District Court's speculation that all of these top-tier providers must have provided fewer services than Wells Fargo has no support tin the record and is improper at the pleadings stage.

SAC and rebuts Defendants' contention that the comparator plans were apples to oranges.[13]

Again ignoring the governing standards at the pleadings stage, Defendants quibble with Plaintiff's math and argue that limitations regarding publicly-available information with respect to the actual fees and services provided by the comparator plans limit the accuracy and robustness of Plaintiffs' analysis.  Besides being inaccurate, Defendants' argument proves too much and demonstrates the need for discovery, including expert discovery, so that both sides can refine their analyses of whether the comparator plans, and the 121 plans analyzed in the NEPC report, provide apples-to apples or apples-to-oranges comparisons. In dismissing Plaintiffs' First Amended Complaint, the District Court flouted the governing standards that require all reasonable inferences be drawn in favor of Plaintiffs, writing: "Plaintiffs may have identified two apples, but one could be a Honeycrisp and the other a Granny Smith." Appx0038. Nothing more than such a close comparison should be required at the pleadings stage. Contrary to Defendants' arguments, Plaintiffs do not need to provide examples of plans with the same exact size and assets to satisfy the governing plausibility standard.

---

[13] Plaintiffs' complaint in *Sweda* did not reference the NEPC report.

**4. That Fidelity Charged Almost Four Times Less for the Same Recordkeeping Services Reflects that Defendants Breached Their Fiduciary Duties**

As discussed above, once the Defendants finally conducted competitive bidding for recordkeeping services, they were able to hire Fidelity to perform the same recordkeeping services as Wells Fargo at a radically-reduced cost. Defendants' implied and unsupported speculation – that the reason why Fidelity charged almost four times less than the fees charged by Wells Fargo may be because Fidelity provided fewer services – is nonsense. If that were true, Defendants would have surely placed into the record the full copies of their contracts with Wells Fargo and Fidelity. They did not. Moreover, Plaintiffs' alleged that if, in fact, Fidelity provided lesser services than Wells Fargo, Defendants' duty of candor would have required them to disclose that fact to Plan participants. Yet they made no such disclosure, thereby confirming that the services offered by Fidelity were materially identical to those offered by Wells Fargo. Appx2112 (SAC ¶ 15, fn. 4); Appx2147 (SAC ¶ 114). The District Court accepted Defendants' unsupported fact-based argument, contrary to governing standards for Rule 12 motions.

Moreover, "the primary driver of price [in large plans with revenue-sharing fee arrangements] are the number of accounts and whether the plan's fiduciaries solicited competitive bids, rather than the marginal cost of recordkeeping for each participant." *Coyer*, 2022 U.S. Dist. LEXIS 175972, at *14. Indeed, Plaintiffs

26

identified other similarly sized plans that used Wells Fargo and paid far less than the Plan. Appx2141-Appx2143 (SAC ¶¶ 102-105). "Plaintiffs' assertion that "[t]he fact that each of the other similarly-sized plans were receiving at least the same services for less provides the kind of circumstantial evidence sufficient to create an inference of imprudence," *Id.* at \*14, citing *Sweda*, 93 F.3d at 332.

All of Plaintiffs' recordkeeping allegations, taken together, are more than sufficient to state a plausible claim of fiduciary breach. Indeed, the comparison above of the allegations found sufficient in *Sweda* and those made by Plaintiffs here proves as much.

## **CONCLUSION**

The Court should reverse the District Court's dismissal of Plaintiffs' claims.

Dated:  March 1, 2023

Respectfully submitted,

CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP

*/s/ Steven A. Schwartz*
Steven A. Schwartz
steveschwartz@chimicles.com
Beena M. McDonald
bmm@chimicles.com
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
Paul R. Wood, Esquire
woodp@fdazar.com

Timothy Foster, Esquire
fostert@fdazar.com
FRANKLIN D. AZAR
 & ASSOCIATES, P.C.
14426 E. Evans Avenue
Aurora, CO 80015
Phone: (303) 757-3300

*Attorneys for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that I am a member in good standing of the Bar for the United States Court of Appeals for the Third Circuit.

I further certify that the text of the electronic brief filed by ECF and the text of the hard copies filed or to be filed with the Court are identical.

The electronic copy of the brief has been scanned for viruses using Carbon Black.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,465 words as calculated by the word processing program used in the preparation of this brief, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2019 and Times New Roman 14-point font.

Dated:  March 1, 2023                    */s/ Steven A. Schwartz*
                                        Steven A. Schwartz

## **<u>CERTIFICATE OF SERVICE</u>**

I, Steven A. Schwartz, hereby certify that on March 1, 2023, the foregoing

REPLY BRIEF FOR PLAINTIFFS-APPELLANTS was served electronically, by

consent, on all counsel of record via email, and that it is available for viewing on

and downloading from the CM/ECF system.


Dated:  March 1, 2023                    *<u>Steven A. Schwartz</u>*
                                         Steven A. Schwartz